**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 7** |
| | ) | **Case No. 04 B 8748** |
| **JOSEPH S. BEALE,** | ) | |
| **Debtor.** | ) | |
| _____ | ) | **Adversary No. 04 A 2416** |
| | ) | |
| **ANDREW J. MAXWELL, Trustee,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **DISTRICT COURT** |
| **v.** | ) | **CASE NO. 08 C 04209** |
| | ) | |
| **T. GREGORY KEMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**TRUSTEE'S RESPONSE IN OPPOSITION TO THE
<u>MOTION TO WITHDRAW THE REFERENCE</u>**

Andrew J. Maxwell, not individually, but solely as the Chapter 7 Trustee (the "Trustee")

for the bankruptcy estate of Joseph S. Beale ("Estate"), hereby responds in opposition to the

Paiea Defendants' Motion to Withdraw the Reference to the Bankruptcy Court (the "Motion"),

the sole purported basis for which is that some of the movants allegedly have a right to a jury

trial on some of the claims against them.[1]  As more fully described below, the Motion should be

denied.

<u>**Introduction**</u>

The Motion, in which the Paiea Defendants seek to withdraw the reference in most, but

not all, of the counts pending against them in the above-captioned adversary proceeding (the

_____

[1]    The moving defendants are T. Gregory Kemp ("Kemp"), Jon Miho ("Miho"), Airport
Trade Center, LLC ("ATC"), JPPM Investments, LLC, Nimitz-Paiea, Inc. ("Nimitz-Paiea"), PLP
Holdings, Inc. ("PLP"), Paiea Holdings, Inc. ("Paiea Holdings"), Paiea Properties and TGK
Investments, LLC (collectively, the "Paiea Defendants").

"Adversary"), is, simply put, a blatant effort at forum-shopping.  Indeed, the timing of the Paiea Defendants' Motion demonstrates that they, having previously unequivocally elected to proceed to trial before the Bankruptcy Court, as is demonstrated in the attached transcripts from recent hearings, have either become dissatisfied with Bankruptcy Judge Black's rulings or believe that the Trustee will be disadvantaged by increased costs or otherwise by a change of forum.  They thus are employing the Motion as an aggressive and improper litigation tactic to replace Judge Black and to increase the Trustee's costs and expenses.  This Court should flatly reject the Paiea Defendants' Motion on that basis alone.

There remain at least three substantial issues that should be determined prior to any withdrawal of the reference: 1) whether the Paiea Defendants even have a jury trial right; 2) whether the Paiea Defendants have waived any alleged jury trial right; and 3) whether a trial is necessary on any count allegedly triable to a jury (that cannot be determined by dispositive motion).  The Bankruptcy Judge's long history and deep familiarity with this proceeding and related matters tried before him in the Bankruptcy Case weigh heavily in favor of denying the Motion and allowing him to make each of these determinations, as well as whether the claims at issue are core or non-core.  The Bankruptcy Judge may also determine that there are equitable counts that should be severed and tried separately in the Bankruptcy Court.  This would be a particularly appropriate ruling, given that the Paiea Defendants appear to concede (by omitting them from the Motion) that at least certain of the counts – Counts 59, 61 and 62 – should remain with and be heard by the Bankruptcy Court.

There would be no prejudice to the Paiea Defendants resulting from the denial of their Motion to afford the Parties time to seek rulings from the Bankruptcy Judge on these issues.  Any urgency the Paiea Defendants claim as a result of an approaching trial date is contrived and

entirely of their own making.  The Bankruptcy Judge did not set the Adversary for trial *sua sponte.*  To the contrary, the Bankruptcy Judge set a trial date – on his own calendar, not the calendar of any District Judge – *at the specific and repeated requests* of the Paiea Defendants.[2] For the Paiea Defendants now to use the approaching trial date as a basis for demanding immediate withdrawal of the reference of the proceeding from the very judge they asked to set aside time to hear it is an improper tactic, and this Court should neither countenance nor reward it.

Finally, even if one or more of the Paiea Defendants were entitled to a jury trial on the predominantly core claims pending against them (and the Trustee contends that they are not), the Motion would still be premature, because the Adversary is not trial ready.  Discovery is in progress, expert discovery has not even commenced, motion practice likely is not complete, and trial is months away at the earliest.[3]  Even then, it is not clear at this point whether there will be any issues of fact for a jury to hear.

The Motion is a patent attempt by the Paiea Defendants to forum-shop, and, accordingly, this Court should deny it.  At a minimum, the Bankruptcy Judge should continue to handle all pre-trial matters, as he has been doing for the past four years and as this Court determined he should continue to do when it denied the Paiea Defendants' motion to withdraw reference in May, 2007.[4]

---

[2]      As more fully described below, counsel for the Paiea Defendants repeatedly requested a trial in the Bankruptcy Court at nearly every hearing since February 27, 2008.  (The original date was rescheduled on motion by the Trustee.)  [Adversary Docket No. 689]

[3]      Because the trial date is set on Bankruptcy Judge Black's calendar and the Paiea Defendants now seek to have a District Court conduct the trial, it is not at all clear that there is a real trial date pending as a practical matter.

[4]      After this Court's May, 2007 ruling, the Parties proceeded to an evidentiary hearing on a motion by most of the Paiea Defendants to lift the automatic stay ("Lift Stay Motion").  Thereafter, the

## Argument

Pursuant to 28 U.S.C. § 157(d), a district court "may withdraw, in whole or in part, any case or proceeding … on its own motion or on timely motion of any party, for cause shown … ."[5] The factors to be considered in connection with a motion for permissive withdrawal of the reference to the bankruptcy court include "judicial economy, convenience, and the particular court's knowledge of the facts" as well as "promoting the uniformity and efficiency of bankruptcy administration, reduction of forum shopping and confusion, conservation of debtor and creditor resources, and whether the parties requested a jury trial." *In re Dreis & Krump Manufacturing Co.*, 1995 WL 41416 (N.D. Ill., Jan. 31, 1995), at p. 3.

With the exception of the Paiea Defendants' contentions that they are entitled to a jury trial (which is addressed below), each and every one of the relevant factors weighs against the Paiea Defendants' Motion. First, the Bankruptcy Court is fully familiar with the Bankruptcy Case, the Debtor's assets and, most particularly, the dispute between the Trustee and the Paiea Defendants, such that judicial economy, conservation of resources and uniformity of administration would all be best-served if the proceeding remained in the Bankruptcy Court.

Indeed, the Bankruptcy Court's familiarity with these Parties dates back to at least May 2004, when, with the Trustee's initial complaint pending against Paiea Defendants ATC, Nimitz-Paiea, Paiea Holdings, Paiea Properties, PLP Holdings and Kemp [Adversary Docket, No. 1], the Court entered an agreed order enjoining them from making transfers to or for the benefit of the Debtor or any insider of the Debtor (the "Injunction Order"). [Adversary Docket, No. 18.] The scope and effect of that Injunction Order remains at issue in the Adversary and, in particular, in

---

Bankruptcy Court conducted a number of status conferences concerning negotiations between the Parties. Discovery thus has been actively proceeding for only a few months.

[5]        The Paiea Defendants do not invoke the mandatory withdrawal provisions of § 157(d).

Count 70 of the current, Fourth Amended Complaint (the "Complaint") for breach of duty and corporate oppression.[6]  Clearly, the Bankruptcy Judge who entered the Injunction Order will be in the best position to rule as to its meaning and effect.

In addition to having presided over the pleadings and the hearing at which the Injunction Order was issued, the Bankruptcy Judge heard and ruled upon many other matters in the Adversary, including the Paiea Defendants' motion to dismiss certain of the claims against them [Adversary Docket, No. 608], and procedural and discovery-related motions and disputes between the Parties [Adversary Docket, Nos. 200, 255, 656, 677, 688.]  In addition, the Bankruptcy Judge is deeply familiar with proceedings in the Bankruptcy Case, including proceedings involving the Paiea Defendants directly.

Most specifically, in or about October of 2006, most of the Paiea Defendants joined in the filing of a motion to lift the automatic stay ("Lift Stay Motion") in the Bankruptcy Case for the purpose of making a capital call upon the Estate's indirect interest in ATC.  [Bankruptcy Docket, Nos. 492, 494.]  The Lift Stay Motion attached a series of capital calls previously served upon the Trustee that advised, among other things, that ATC required sums ranging up to $2 million for supposedly necessary roof repairs and to pay off certain debts allegedly owed to Kemp; the capital calls warned that ATC intended to grant additional membership interests to those members who met the capital call (effectively diluting the Estate's interest).  [*E.g.,*

---

[6]      The claims against the Paiea Defendants (though not all Defendants are named in all counts) are: Count 59, which sought preliminary injunctive relief; Count 61, seeking dissolution, winding up and distribution of the assets of ATC; Count 62, seeking an appointment of an independent receiver to operate and sell the assets of ATC; Count 64, alleging a conspiracy to fraudulently transfer Debtor's assets; Count 65 for aiding and abetting a scheme to fraudulently transfer assets; Counts 67 and 68, for fraudulent transfers; Count 69, seeking preliminary and permanent injunctive relief; Count 70, alleging breach of fiduciary duty and corporate oppression and seeking, *inter alia*, appointment of a receiver and the compelled buy-out of the Estate's interest in ATC; Counts 71 through 74, actions on certain promissory notes; and Count 75, seeking declaratory relief relating to the note counts.  The Paiea Defendants have specified in their Motion and apparently seek to withdraw the reference only as to Counts 64 through 75. Motion, pp. 1-3.

Bankruptcy Docket, No. 492, Exh. 1.]  The Bankruptcy Court conducted a two-day evidentiary

hearing at which Kemp was the movants' primary witness and the testimony included detailed

information about ATC's financial condition, financial statements and business practices,

transfers made after the Injunction Order was entered and the nature of the alleged debts owed to

Kemp.  At the conclusion of the hearing, the Bankruptcy Court denied the Lift Stay Motion,

finding against the Paiea Defendants on the relevant issues of fact.  [Bankruptcy Docket, Nos.

594, 595, 596.]  The Bankruptcy Judge thus has not only general familiarity with and knowledge

of the issues in question, but very specific knowledge and information pertinent to the

Adversary.  The Parties would necessarily incur additional time and expense in familiarizing the

District Court with the facts, the issues and the status of the proceedings that are already so well

known to the Bankruptcy Court.  Consequently, the factors relevant to consideration of a motion

for permissive withdrawal of the reference weigh very heavily in favor of denying the Motion

and allowing the Bankruptcy Judge to continue to preside over the Adversary.

     Moreover, contrary to the Paiea Defendants' contention, the existence of a jury demand

and refusal to consent to a jury trial by the Bankruptcy Court does not automatically require

withdrawal of the reference:

> The fact that the Defendant may well have a right to jury trial, if such a trial
> eventuates, is not determinative.  To be sure, 'a district court is not compelled to
> withdraw a reference simply because a party is entitled to a jury trial.'

*Plan Administrator v. Lone Star RV Sales, Inc. (In re Conseco Finance Corp.)*, 324 B.R. 50, 55

(N.D. Ill. 2005) (declining to withdraw the reference where dispositive motions might resolve the

matter).  Indeed, the *Conseco* Court noted that "[a]lthough withdrawal is an important

component of [the statutory scheme governing the relationship between the district courts and

bankruptcy courts], the court *must employ it judiciously in order to prevent it from becoming just*

*another litigation tactic for parties eager to find a way out of bankruptcy court." Id.* (emphasis added).

Thus, even where (unlike here) there is an undisputed jury trial right, whether withdrawal is appropriate is an issue ripe for determination only if and when the matter is ready for trial; until that time, the bankruptcy judge may resolve pretrial interlocutory questions and, if appropriate, make recommendations based on proposed findings of fact and conclusions of law on potentially dispositive motions. *See, e.g., Business Communications, Inc.*, 129 B.R. 165, 166 (N.D. Ill. 1991); *Dreis & Krump Manufacturing Co.*, 1995 WL 41416 at p. *3 (even where a jury trial is necessary, "[a]llowing the bankruptcy court to resolve pretrial issues and enter findings of fact and recommendations of law on dispositive issues … is consistent with Congress' intent to let expert bankruptcy judges determine bankruptcy matters to the greatest extent possible"). The *Dreis & Krump* Court specifically noted that judicial economy may best be served by allowing the bankruptcy judge to hear all pretrial matters, finding that "[t]his course of action will allow the proceedings to continue in the most efficient manner possible and with a minimum of interference in the bankruptcy proceeding by this Court." *Id.; and see, Baldi v. Longview Alumninum*, 2002 WL 31834491 (N.D. Ill. Dec. 12, 2002), at p. *1 (postponing withdrawal of the reference where defendant had an undisputed jury trial right "until pre-trial matters and discovery have been completed"); *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Industries, Inc.)*, 1994 WL 654662 (N.D. Ill. Nov. 10, 1994), at p. * 2 (denying motion to withdraw reference in the interest of judicial economy to allow pretrial matters to be considered by the bankruptcy judge, who had "general expertise in bankruptcy law and particular familiarity with the Chapter 11 proceedings in this case").

Here, the proceeding is not trial-ready. Discovery is still proceeding, expert reports have not yet been issued and expert depositions have not been taken. Nor has the Bankruptcy Judge set any deadlines for potentially dispositive motions.[7] In addition, as noted above, a trial date was set in the Adversary as the result of specific, direct and repeated demands by the Paiea Defendants to the Bankruptcy Court. For example, on May 22, 2008, while a motion by the Trustee to add certain counts to the Complaint by amendment was pending and was to be heard on June 26, 2008, counsel for the Paiea Defendants said:

> Your Honor, we would request scheduling of a trial date now. We don't feel that this needs to wait until the 26[th].

See Partial Transcript of May 22, 2008 Hearing, at p. 9 (attached as Exhibit A hereto). Paiea Defendants' counsel then objected to even a one month postponement of the proposed trial date, noting that her request for a September trial stood "*regardless of the amendment*." *Id.*, at p. 10-11 (emphasis added). Similarly, on July 10, 2008, Paiea Defendants' counsel, Alex Terras, reminded the Court that:

> The defendants have been asking for a trial date for some months now. Your Honor has granted that trial date.

Partial Transcript of July 10, 2008 Hearing, at p. 3 (attached as Exhibit B hereto), and see p. 9 (noting that a dispute over production of certain documents is "certainly not a basis for continuing a trial that's been set for a while at the request of the defendants"). And, on July 16, 2008, when the Bankruptcy Judge re-set the trial to commence in his courtroom on November

---

[7]     Mr. Terras, counsel for the Paiea Defendants, conceded as recently as July 16, 2008, that further motion practice may be necessary. *See* Transcript of the July 16, 2008, hearing, p. 14 (a copy of which has been attached hereto as Exhibit C). For  example, dispositive motions may resolve certain of the note counts. Although the Paiea Defendants now purport to contest the enforceability of the notes, certain of the Paiea Defendants testified to the contrary in 2004. (See Partial Transcripts included in Adversary Docket No. 659, Exhs. 3, 4.)

17, 2008 at 9:15 a.m., counsel for the Paiea Defendants remained silent and gave no hint that they in fact expected to pursue a jury trial before the District Court.  See Partial Transcript of July 16, 2008 Hearing, at p. 13 (attached as Exhibit C hereto).  Indeed, in what appears to be nothing more than pure gamesmanship, the Paiea Defendants filed this Motion and a jury demand just *two days after their tacit acceptance of the trial date.*  [Adversary Docket No. 685, 686.]

The Motion thus is precisely the kind of litigation tactic about which the *Conseco* Court was concerned.  The Paiea Defendants should not be permitted to serve their own, self-serving strategic ends in this fashion at the expense of the Trustee.  They ought not to be permitted to use as a basis for their Motion and, most specifically, for their demand that withdrawal occur immediately, pending trial dates that were set at the Paiea Defendants' own request before a judge they now contend has no authority to conduct the very trial they claimed to want and asked him to put on his calendar.

The Motion should be denied or, at a minimum, delayed, until the Bankruptcy Court has had an opportunity to determine whether the claims are core or non-core, whether the claims are ones giving rise to a jury trial right and, most particularly, whether the Paiea Defendants have submitted to the Bankruptcy Court's jurisdiction or otherwise waived their alleged right to a jury trial.

## Conclusion

The Paiea Defendants' Motion is nothing more than a litigation tactic and attempt to forum shop.  They should not be permitted to impose upon the Trustee and the Courts the added expense and duplication of effort inherent in having a District Judge become familiar with the Adversary, conduct any remaining pre-trial hearings and conduct a trial, and they most certainly

should not be permitted to do so before the Bankruptcy Court has determined whether these

Defendants are entitled to a jury trial in the first place.  For all of the foregoing reasons, the

Motion should be denied or, at a minimum, this Court's ruling on it should be postponed pending

consideration of those issues by the Bankruptcy Court.


Dated:  August 28, 2008                    Respectfully submitted,


                                           __/s/ Patricia K. Smoots_____
                                           One of the attorneys for
                                           **Andrew J. Maxwell, Chapter 7 Trustee**

Richard J. Mason, P.C. (ARDC #01787659)
Patricia K. Smoots (ARDC #06194076)
John F. Pollick (ARDC #03128122)
Michael M. Schmahl (ARDC #06275860)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL  60601
(312) 849-8100

\6509083.4

# EXHIBIT A

1

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4    In re:                        )
                                    )
 5    JOSEPH S. BEALE,              ) No. 04 B 08748
                                    )
 6                 Debtor.          )
      ------------------------------)
 7    ANDREW J. MAXWELL, trustee,   )
                                    ) No. 04 A 02416
 8                 Plaintiff,       )
                                    )
 9              vs.                 )
                                    )
10    LARIMORE, et al.,             ) Chicago, Illinois
                                    ) May 22, 2008
11                 Defendants.      ) 10:30 a.m.

12

13           TRANSCRIPT OF PROCEEDINGS BEFORE THE
                  HONORABLE BRUCE W. BLACK
14

15    APPEARANCES:

16    MS. PATRICIA SMOOTS
      on behalf of the trustee;
17
      MS. PIA THOMPSON
18    on behalf of the Kemp-related entities.

19

20

21

22

23

24

25
```

1   give another seven days for a surreply and then set
2   the matter...
3           MS. SMOOTS:  Your Honor, for what it's
4   worth, I will be out of -- out of town from the 11th
5   through the 25th of June.
6           THE COURT:  All right.
7           MS. SMOOTS:  That takes a big chunk out
8   of that, unfortunately.
9           THE COURT:  Between the two of us...
10          MR. MAXWELL:  There's another matter up
11  on the 26th, a Beale matter.
12          MS. SMOOTS:  Your Honor, Mr. Maxwell
13  advises me that there is a Beale matter up on the
14  26th of June.
15          THE COURT:  All right.  Well, let's put
16  this on the 26th of June also.
17          MS. THOMPSON:  Your Honor, we would
18  request scheduling of a trial date now.  We don't
19  feel that this needs to wait until the 26th.
20          THE COURT:  August 18th looks like a good
21  trial date.
22          MS. THOMPSON:  Your Honor, if I may make
23  one -- I am actually on vacation.  If it's possible
24  to have the next week at all?
25          MS. SMOOTS:  Your Honor --

1    MS. THOMPSON:  Are you, too?

2    MS. SMOOTS:  -- that would be a very

3    tight schedule for trial only because we still have

4    depositions to take out in Hawaii.  You know, we

5    would be planning to take the depositions of both

6    Mr. Miho and Mr. Kemp, and perhaps additional

7    people.  In addition, we anticipate that there will

8    be expert testimony, and there have been no dates

9    set for, you know, disclosure of experts or expert

10   reports.

11   MS. THOMPSON:  Your Honor, we don't

12   object to a trial date in September.

13   THE COURT:  September 15th is fine.

14   MS. THOMPSON:  That's fine, Your Honor.

15   MS. SMOOTS:  Again, Your Honor, I do

16   believe that that would be a very tight schedule.

17   Is there any way we could push it into October?

18   MS. THOMPSON:  Your Honor, we object to

19   that especially insofar as, regardless of the

20   amendment --

21   THE COURT:  You need not object.

22   MS. THOMPSON:  -- we think discovery --

23   THE COURT:  You need not object.

24   September 15th is a long way from now, and there's

25   no reason that we can't be ready for trial at that

1    time.  This has gone on long enough.  This is a 04

2    case, and we simply don't need to delay.  Granted,

3    there may be a lot of work on both sides between now

4    and then, but we'll hear the motion on the 26th of

5    June.  And at this point, the trial is set for

6    September 15th at 9:15 in the morning.

7              MS. SMOOTS:  9:15, Your Honor?

8              THE COURT:  Correct.

9              MS. THOMPSON:  Thank you, Your Honor.

10             MS. SMOOTS:  Should we estimate the time

11   for trial, Your Honor, if I may?  Or is that

12   something...

13             THE COURT:  Two days, maybe.

14             MS. SMOOTS:  I would actually estimate

15   that that's probably about right.

16             THE COURT:  Well, I'll have Monday and

17   Tuesday, and then afternoons the rest of the week,

18   if we need them.

19             MS. THOMPSON:  That should be fine, Your

20   Honor.

21             THE COURT:  Good.

22             MS. SMOOTS:  Thank you, Your Honor.

23             MS. THOMPSON:  Thank you.

24             THE COURT:  So I'll see you on the 26th

25   of June at 10:30.

12

1          MS. THOMPSON:  Yes.

2

3                    (Which were all the proceedings
                    had in the above-entitled cause,
4                    May 22, 2008.)

5

6    I, GARY SCHNEIDER, CRR, DO HEREBY CERTIFY THAT THE
     FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
7    PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH BEALE,       )   No. 04 B 8748
             )   Chicago, Illinois
             )   9:30 a.m.
       Debtor.  )   July 10, 2008

TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE BRUCE W. BLACK

APPEARANCES:

For the Trustee:    Ms. Patricia Smoots;

For Remaining Defendants: Mr. Alexander Terras;

Court Reporter:    Amy Doolin, CSR, RPR
          U.S. Courthouse
          219 South Dearborn
          Room 661
          Chicago, IL  60604.

2

1          THE CLERK:   Maxwell versus Larimore,

2  et al.

3          MS. SMOOTS:   Good morning, Your Honor.

4  Patricia Smoots on behalf of Andrew Maxwell, Chapter

5  7 trustee.

6          MR. TERRAS:   Good morning, Your Honor.

7  Alexander Terras on behalf of the remaining

8  defendants.

9          MS. SMOOTS:   Your Honor, what's up

10  today is the trustee's motion for a 60-day extension

11  of the trial date, disclosure of experts and pretrial

12  statement.   Your Honor, we have, since the trial date

13  was set, engaged in a great deal of discovery and

14  attempts to conduct discovery.   We now believe that

15  the depositions of the defendants will take place the

16  week of August 4th in Hawaii, but that leaves no

17  ability for the experts to review their testimony and

18  to include it in the initial reports.

19          In addition, the experts have advised

20  us they need certain information that we are

21  attempting to obtain from the defendants.   We have

22  not yet received tax returns or information from the

23  tax returns that we believe may be inconsistent with

24  some of the positions the defendants are taking at

25  this point.

3

1          We've also been told by the expert

2    that we need additional leasing and lease information

3    and up-to-date financial information for the

4    entities, which we do not yet have.  Your Honor, I

5    believe that extension would be a short one,

6    approximately 60 days.  That's what we are seeking.

7    And it is just as a practical matter to get this

8    ready for trial, we need that time.

9              THE COURT:  Response.

10             MR. TERRAS:  Your Honor, as the court

11   will recall, the defendants have been asking for a

12   trial date for some months now.  Your Honor has

13   granted that trial date.  The representations of the

14   trustee are simply not accurate.  In fact, of course,

15   the financial information regarding this property is

16   provided to the trustee on a monthly basis.  They

17   have all the information they need.

18             They have the corporate tax returns.

19   Some of those were seized at the beginning of this

20   case.  There is some issue about the disclosure of

21   the individual tax returns of the individual

22   defendants.  We intend to make a motion for

23   protective order.  That should be before Your Honor

24   on his next motion call and can be resolved then.

25             That is the only discovery issue.

8

1   if we do not produce all of the leases within the

2   next three days, we will consent to this extension.

3   I think we have produced them, but if we haven't,

4   then we will.  And they are current, current

5   iterations of the lease, not an attempt to conceal or

6   hold information.

7               And this is a problem that's going to

8   exist at any time.  And, I quite, frankly, don't know

9   why a real estate valuation expert is going to have

10  to examine the fact testimony of Mr. Kemp, Mr. Miho

11  or their tax accountant.  I don't think that has

12  anything to do with valuation of the property, which

13  is my understanding of what this expert's mission is.

14              THE COURT:  Paragraph 15 of the motion

15  says that defendants have refused to produce tax

16  returns of the individual defendants, and you agree

17  with that and you're filing a motion.

18              MR. TERRAS:  We on a nonemergency

19  basis will be before Your Honor on the next motion

20  call with a brief motion suggesting that it is

21  inappropriate in this proceeding to require the

22  individual defendants to disclose their tax returns.

23  There is substantial law on that point which I think

24  supports their position.

25              Even if the court were to deny our

9

1  motion, fine.  Then we would have the tax returns --

2  if the motion is heard on the 16th, we would have the

3  tax returns certainly by the 21st or even sooner.  So

4  that is also not very challenging.  I can't imagine

5  what the individual tax returns have to do with any

6  issue in this case.  And that will be an argument the

7  next time we are before Your Honor.  But it's

8  certainly not a basis for continuing a trial that's

9  been set for a while at the request of the

10 defendants.

11          THE COURT:  Well, the defendants

12 certainly have a right to a trial, and the trustee

13 certainly has a right to discovery to be prepared for

14 the trial.  I will continue this motion to next

15 Wednesday, which is July 16th at 10:30.  And you can

16 bring your new motion for the same time.  And you

17 must bring it to be heard then or I will grant this

18 motion then.

19          MR. TERRAS:  Very good.  Thank you,

20 Your Honor.

21          MS. SMOOTS:  Your Honor, one comment I

22 would to make on that date, is that the expert

23 reports are currently due the following day, the

24 17th.  I don't know how, you know, if the motion is

25 denied, we would possibly be able to get the expert

1    reports done by then.  I mean, I would have

2    essentially 24 hours.

3                   MR. TERRAS:  Your Honor, I don't

4    oppose the extension of that deadline for a week or

5    two.  It's the trial date we are after.  In fact, to

6    deal with the issue of the depositions and the expert

7    reports, I have no objection to extending the expert

8    reports to ten days after the depositions are

9    concluded.  I am only interested in the trial.

10                  MS. SMOOTS:  That, of course, leaves

11   virtually no time for us to review any responsive

12   report.  But, you know, I would like the extension of

13   the expert reports.  I don't know if that's possible,

14   but I do want to go on as saying I do not believe

15   that that is workable with the current trial date.

16                  THE COURT:  All right.  Well, the

17   depositions are set the first week in August.

18                  MS. SMOOTS:  They will be, Your Honor.

19   They are not yet set, but we hope to be able to

20   arrange them.

21                  THE COURT:  So I will extend the

22   expert report date to August 15th.

23                  MR. TERRAS:  And appropriately extend

24   the date for any rebuttal expert, I would assume,

25   Your Honor?

11

1                    THE COURT:   Correct.

2                    MS. SMOOTS:   That would put the

3    rebuttal expert reports due on the trial date, Your

4    Honor.

5                    MR. TERRAS:   Well, then we will

6    produce them a week before the trial.

7                    MS. SMOOTS:   When the pretrial

8    statement is due.

9                    THE COURT:   And we'll revisit all

10   these dates next Wednesday.

11                   MS. SMOOTS:   Thank you, Your Honor.

12                   MR. TERRAS:   Thank you, Your Honor.

13                   (Which were all the proceedings had in

14                   the above-entitled cause, July 10,

15                   2008, 10:30 a.m.)

16   I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY
     THAT THE FOREGOING IS A TRUE AND ACCURATE
17   TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
     ENTITLED CAUSE.

18

19

20

21

22

23

24

25

**EXHIBIT C**

1

1    IN THE UNITED STATES BANKRUPTCY COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3

4    In re:                        )
                                   )
5    JOSEPH S. BEALE,              ) No. 04 B 08748
                                   )
6               Debtor.            )
     --------------------------)
7    ANDREW J. MAXWELL, trustee,   )
                                   ) No. 04 A 02416
8               Plaintiff,         )
                                   )
9         vs.                      )
                                   )
10   LARIMORE, et al.,             ) Chicago, Illinois
                                   ) July 16, 2008
11              Defendants.    )    10:30 a.m.

12

13       TRANSCRIPT OF PROCEEDINGS BEFORE THE
              HONORABLE BRUCE W. BLACK

14

15   APPEARANCES:

16   MS. PATRICIA SMOOTS
     on behalf of Andrew Maxwell, the trustee;

17

18   MR. ALEXANDER TERRAS
     MS. PIA THOMPSON
     on behalf of the Kemp-related entities.

19

20

21

22

23

24

25

13

1    And under these circumstances, and given the nature

2    of the status of discovery, I'm going to grant the

3    motion.  I'll continue the trial to November 17th,

4    if that date is reasonably convenient for the

5    attorneys.  That's a Monday of the week prior to the

6    week containing Thanksgiving.  So we'll have Monday

7    and Tuesday, and then the following Monday and

8    Tuesday, if we need it.

9              MS. SMOOTS:  That looks acceptable to me,

10   Your Honor.

11             THE COURT:  And we'll start the trial at

12   9:15 on November 17th.

13             MR. TERRAS:  I think that I would ask the

14   court to entertain one request, that we enter a

15   pre-trial order at some time well before that time.

16   The reason for my request is that at this point,

17   after the discovery deposition of the trustee, the

18   defendants still do not know what witnesses, these

19   are fact witnesses, not experts, will be called in

20   support of any of the trustee's allegations.  I

21   think it is important that the parties know who the

22   witnesses may be and what documents are going to be

23   introduced into evidence more than a week before

24   trial.  Usually it's the case that the parties know

25   this.  And the trustee has yet to identify any

14

1    witness other than, of course, the ones we already

2    know who are being deposed or have been deposed who

3    will appear at the trial.

4                    So I think it is nonburdensome for

5    the court to say you ought to decide who your

6    witnesses are going to be; what your documents are;

7    who your experts are going to be at some point in

8    September, perhaps, because I, quite frankly, expect

9    that when that order is entered, we will be able --

10    we may again engage in motion practice.  I think the

11    fact that we can't seem to figure out who's going to

12    testify on behalf of the trustee in support of these

13    allegations is a problem.  And I think compelling

14    the trustee and ourselves to identify who our

15    witnesses are, what our evidence is, should come

16    before the trial, and certainly earlier than a week

17    before the trial.

18                    MS. SMOOTS:  Your Honor, I object to

19    that.  And, frankly, it is not the standard

20    practice.  The standard practice is to serve

21    discovery requests that ask for the names and

22    identification of people with information.  I

23    believe we've done that.  We have a large number of

24    documents that have been produced by both sides in

25    this case.  And a great deal of strategic analysis

1    of what the trial will actually look like happens

2    within the, you know, two to three weeks before

3    trial.  And that is why, generally, at least to the

4    extent I'm familiar with practices of the judges in

5    this district, it's only a week, at most two weeks,

6    before trial that expert -- not expert witness, but

7    the testifying witnesses and the listing of exhibits

8    to be introduced at trial are disclosed.  And then

9    the opposite party has a time to raise objections,

10   and those are generally heard on the opening day of

11   trial.  But to require us to lock ourselves in two

12   months before trial as to who will be called as a

13   witness and what exhibits we will use is, I believe,

14   just way too early.  And, in fact, it means that,

15   once again, we are struggling with a very tight

16   schedule here even with the extension we have

17   requested.  And that simply, you know, pushes back

18   again many of the trial preparations that we are

19   struggling to complete.

20        MR. TERRAS:  Your Honor, that,

21   unfortunately, is not the case.  The trustee was

22   unable to identify any witness with information,

23   forget about whether they're going to testify at

24   trial, other than Kemp, Beale, Miho, the accountant,

25   and those who were already on the discovery

1    schedule.  It is extremely useful to know who might

2    testify, who might have that information.  At this

3    point, the trustee couldn't do that.

4              So how do we find out whether there

5    are any witnesses upon whom no discovery has been

6    taken.  At some point the trustee has to say, and so

7    and so has information and could be a witness at the

8    trial.  That hasn't happened.  And we're even now

9    pretty close to trial.  Not as close as we'd like to

10   be, but, as Ms. Smoots just pointed out, still quite

11   close to trial.  And to have us wait until a week

12   before trial for the trustee to finally identify any

13   witness who is not already subject to discovery is

14   simply unreasonable.

15             THE COURT:  This is a case that was filed

16   in 2004, and I'm sympathetic to the request.  I will

17   schedule a status conference on October 1 at 10:30.

18   And on that date depositions should be all finished.

19   People should have a good idea of who is going to be

20   testifying.  And I'll entertain a renewed request

21   regarding when witness lists ought to be filed.  But

22   I would think that it should be done in the middle

23   of October, since we're scheduled for trial in the

24   middle of November.  But I'm not deciding that now.

25   We'll take it up on October 1.

1          MS. SMOOTS:  Your Honor --

2          MR. TERRAS:  Your Honor --

3          MS. SMOOTS:  I'm sorry.

4                  One clarification, Your Honor.  I

5    take it that October 1 is not an official discovery

6    cutoff date.

7          THE COURT:  Correct.

8          MS. SMOOTS:  We will be having experts as

9    well, and there may be some, you know, overlapping

10   discovery of people we learned the existence of and

11   learned they have information after that date.

12         THE COURT:  That's correct, I'm not

13   cutting off discovery.  I'm just saying we'll be a

14   lot closer than we are now.

15         MS. SMOOTS:  Thank you, Your Honor.

16         THE COURT:  And the order that I did last

17   week continued the experts, I think, a little sooner

18   than August 16th.  Do we need to revisit that date

19   now?

20         MS. SMOOTS:  Yes, Your Honor.  I'd ask

21   that that be put off to September 15th, which was

22   the date, I believe, we asked for in our motion.

23         MR. TERRAS:  Judge, there's absolutely no

24   basis.  The expert has been hired by the estate for

25   months, if not years.  Years.

1          MS. SMOOTS:  Your Honor --

2          MR. TERRAS:  Now, all of a sudden, the

3    only thing we know now, which is what their expert

4    might say, we're going to find out two weeks before

5    the trial.

6          THE COURT:  Well, September 15th is a

7    reasonable date given the income tax returns not

8    being furnished at this point.  And that's not two

9    weeks before trial, but two months before trial.

10         MR. TERRAS:  True, Judge, but there's a

11   question of the rebuttal expert and the deposition

12   of this expert.  I mean, Judge --

13         MS. SMOOTS:  There will still be 60 days

14   after that, Your Honor.

15         MR. TERRAS:  And that's precisely the

16   complaint the trustee had, that not everything needs

17   to be compressed.  They have had this expert

18   and paid this expert for months.

19         THE COURT:  And September 15th is the

20   date.

21              And, Ms. Smoots, if you'll prepare

22   an order reflecting what I've decided today and

23   furnish that to the other side and then to chambers.

24         MS. SMOOTS:  And we'll deliver that to

25   chambers once we've agreed upon it?

19

1          THE COURT:  That's correct.

2          MR. TERRAS:  Thank you, Your Honor.

3          MS. SMOOTS:  Thank you, Your Honor.

4          THE COURT:  Okay.  Thank you, all.

5

6                    (Which were all the proceedings
                     had in the above-entitled cause,
7                    July 16, 2008.)

8

9     I, JOYCE VAN DAELE, DO HEREBY CERTIFY THAT THE
      FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
10    PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25